## Waugh's Executors *versus* Waugh.

1. W., for a recited consideration, in a formal deed, which was duly acknowledged and recorded, conveyed a certain property to the children of his deceased brother. In the fullest possible form every interest in the property was transferred except that defined by the words "possession of all of said premises to be given at the death of said W." W., until his death, lived on the premises with his tenant, who shared with him the crops. A case was stated between the executors of W. and the grantees under the deed to determine who were entitled to the emblements. *Held*, that the grantees were entitled to them.

2. Free from the limitation imposed by the provision that possession should be withheld, the deed would have carried to the grantees the entire property in all its existing conditions, and the growing crops and rents that had accrued would have passed as appurtenances of the land.

3. The characteristics of his tenure of the land were stamped upon it by the grantor himself, and the terms employed were large enough to denude it of the common-law incidents of an estate for life. At his death the excepted interest was transmitted to the remaindermen, and all other rights, including the title to emblements, had already been surrendered and conveyed.

4. The provision for the retention of possession was an exception from the body of the estate conveyed and not the reservation of a newly-created right of which it was to be the source, and an exception is always to be taken most in favor of the feoffee.

5. The words of the grant are large enough to cover the emblements, and an intendment from them that would retain in the grantees the incidents of a common-law estate for life would demand a strained construction, and established principles require such a strain to be made only in favor of the grantees.

May 21st 1877.   Before Agnew, C. J., Sharswood, Mercur, Gordon, Woodward and Sterrett, JJ.   Paxson, J., absent.

Error to the Court of Common Pleas of *Adams county :* Of May Term 1877, No. 188.

This was a case stated wherein John B. Waugh and others were plaintiffs, and James H. Marshall and Joseph Kittinger, executors of John Waugh, deceased, defendants.

The material portions were as follows :—

John Waugh died in April 1874, having made his will dated November 7th 1870, which was proved April 28th 1874, and letters testamentary granted to the defendants, the executors named in the will.

The plaintiffs are the children of James Waugh, late of Grayson county, Va., who was a brother of John Waugh, and survived him, and died on the 9th day of August 1875.

John Waugh and James Waugh were sons of William Waugh, who died in the year 1823, having devised to them his farm in Hamiltonban township, Adams county, containing 300 acres.

James Waugh conveyed to John Waugh his portion of the lands devised to them by their father, by deed dated June 14th 1852.

On the 7th of July 1873, John Waugh executed and delivered to John B. Waugh and the other parties plaintiff, a deed in fee

[Waugh's Ex'rs v. Waugh.]

simple for all the lands devised to him and James Waugh by their father, as aforesaid, excepting 18 acres which he had previously sold to John Gelbaugh. The deed, after the description of the property, contained this clause : " Possession of all said premises to be given at the death of the said John Waugh, together with all and singular the buildings and improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever, of the said party of the first part in law, equity or otherwise howsoever of, in, to, or out of the same." This deed was recorded July 8th 1873.

The consideration named in the deed was $2000, but there was a further consideration in a release given by James Waugh, by his attorney in fact, John B. Waugh, to John Waugh, dated the same, July 7th 1873, said power of attorney bearing date July 1st 1873.

At the time of the execution of the deed by John Waugh to the plaintiffs, and previously thereto, the farm in question was held under lease from him by J. W. Kittinger, as his tenant, farming the lands and delivering a share of the crops as rent. John Waugh was a bachelor and had his home in the mansion house on his farm, with his tenant, and continued there until his decease in April 1874, at which time Kittinger, the tenant, was holding over under his lease for the previous year, which ended on the 1st of April ; and he continued to hold the property on the same terms for the remainder of the year.

At the time of the death of John Waugh there were growing upon the home farm 45 acres of wheat sown in the fall of 1873, and 18 acres of oats sown in the spring of 1874 ; these were harvested after his death. The landlord's share in these growing crops was appraised by the appraiser of collateral inheritances, and also by the general appraisers as the estate of John Waugh, deceased, and the net proceeds thereof, amounting to $392.98, were received by the defendants, April 1st 1875.

The plaintiffs claim the net proceeds of the landlord's portion of the wheat and oats sown upon the farm in John Waugh's lifetime, and harvested after his decease.

If upon these facts the plaintiffs are entitled to recover, judgment to be entered in their favor for $411.98 and costs ; if otherwise, judgment to be entered for defendants.

The court (Ross, P. J., of the 38th judicial district) delivered an opinion, which is herewith given *in extenso*, on account of the novelty of the question involved and the learned and comprehensive manner in which it is discussed :—

" This case is one which is well calculated to lead the legal mind

into error. I had prepared an opinion ruling that the grantor, John Waugh, was a tenant for life, and that the rent was to be apportioned in pursuance of the provisions of the Act of February 24th 1834, Pamph. L. 73, sect. 7.

" In that opinion I expended much time and labor, and I think I demonstrated · that the estate of the grantor was a freehold—that the deed did not operate as livery of seisin, although delivered, until his death. This I still believe to be true; and while he lived John 'Waugh had a freehold; but I am now satisfied that all this labor and research was upon a matter that did not touch the point at issue.

" The question is whether the deed—the instrument which controls here—vests the right to the rent in the executors or grantees. A tenant for life may merge his particular estate in the remainder. This can be done by deed. If he can merge the whole, he can do so with a part. It cannot be denied that he may assign the right to the rent to the person in remainder, either for a year or a series of years. If he does so, it is perfectly competent for his assignee to receive it.

" To put the case most strongly against the plaintiffs, I will treat the grantor as tenant for life, as I think he is. If he be not such tenant, I can see nothing in the way of plaintiffs' recovery; for save by the statute rent cannot be apportioned : Rockingham *v.* Penrice, 1 Peere Williams 178 ; Toller· on Ex'rs 177–8. It is always an incident of the reversion : Co. Litt. 143 ; 2 Bl. 176. But it is not always inseparable : Id.

" Assuming then, for the sake of the argument, that after his conveyance the grantor was tenant for life, and a freeholder who had not passed livery of seisin to his grantees, we will turn to the deed to determine the status of his interest at his death.

" He conveyed with these words : (The court here recited the portion of the deed contained in the case stated.)

" This seems to be decisive. He could have conveyed all in his lifetime. He did not see fit to do that. He reserved a life estate, and directed that upon his death everything he had reserved should pass.

" Suppose the occupancy, the possession, had not been reserved. Clearly the deed would have conveyed the rent accrued, but not yet payable. He simply postponed until his death the action of this conveyance ; immediately upon his death it became operative, and conveyed the rent precisely as if he had assigned it in his lifetime. This seems to be too clear to admit of argument. If it once be conceded that a tenant for life may merge the particular estate by conveyance in his lifetime, it follows logically that he may convey. its incidents. This is the case here. By this deed he conveyed all the incidents of his life estate, if such it were, at his death to the grantees in the deed. The Act of 1834 apportioning the rent

was a right conferred by statute; but it was not inalienable, and the conveyance, in express terms, aliened it.

"Thus far the reasoning has been on the assumption that the grantor reserved a life estate. As has been said, that is the opinion of the court; but if it be true that the right of occupancy alone was reserved, that no particular estate was outstanding, then the case is clear as the noonday sun. In that event the rent could not be apportioned, and the whole of it would be payable to the owners of the fee.

"There is another view, as yet unnoticed. What interest—what was the quantity of the estate which the deed vested in the grantees pending the life of the grantor?

"First, it was an estate in expectancy, it was an estate in remainder, and that remainder was vested. It therefore carried with it the reversion of all leases made by the grantor during his life, by the operation of common-law principles. The statute apportioning rent between the executors of the tenant for life and the remainderman is inoperative here, for the tenant for life is the grantor, and his grant carried the rent by express terms, *eo instanti* with the expiration of his life. He was the owner of the fee, he aliened it *sub modo*, and his rights, at his death, by force of his conveyance, vested in the remainderman. Had he conveyed in his life absolutely, the rent would have passed. He conveys absolutely in his lifetime, to take effect at his death. The result must be the same.

"Again, suppose that the same language was used in an executory devise—the reservation being in the same language, and the devise in the same terms, surely upon the termination of the particular estate the devisees in remainder would have taken fee and leasehold, notwithstanding the statute.

"The case is *sui generis*, and it is the first instance in my experience where a tenant in fee simple, by the same conveyance, parts with the title and creates a life tenancy. The doubt in the case arises from the fact that the legal mind, in dealing with estates for life, involuntarily calls up that class of freeholds created by a third person, with remainder over. It was to these that the statute was intended to apply; but it cannot operate to defeat the intention of the grantor, or to enable his executors to take that which he expressly grants to others. Again, any deed is to be taken most strongly against the grantor. It may be said that a conveyance of rent is merely a formal routine of conveyancers' language. But this is without force—especially when the spirit of the whole deed is considered.

"I have said that I had elaborated the inquiry as to whether the grantor was tenant for life. I do not reproduce that part of my discarded opinion here, for I am satisfied that it is immaterial

[Waugh's Ex'rs *v.* Waugh.]

whether he was or was not. If tenant for life, his deed expressly conveys the rent due at his death. If he had no freehold estate, then the rent cannot be apportioned under the statute. It is a question of scientific interest, whether the delivery of a deed operates as livery of seisin in Pennsylvania, in a conveyance like this; but as the question presented by the case stated is clearly with the plaintiffs for the reasons given, it would be a mere parade of learning and industry to follow that line of thought. It is apparent that judgment must be entered for the plaintiffs."

Judgment was entered accordingly, and this entry was the error assigned.

*David Wills* and *H. B. Woods*, for plaintiffs in error.—The right of possession cannot be in abeyance, and it therefore remained in John Waugh until his death. This right of possession is not a reservation, but an exception: Pres. Shep. Touchstone 80; 4 Cruise 32, c. 24, sect. 1; 2 Bl. Com. 299. "Possession of all said premises to be given at the death of John Waugh," as contained in this deed, is clearly an exception, and not a reservation, by John Waugh during his lifetime: Whitaker *v.* Brown, 10 Wright 197; Turner *v.* Scott, 1 P. F. Smith 131. John Waugh, having the right of possession, had a life estate in the premises, and was entitled to all the incidents of a tenancy for life. Furthermore, the parts of the deed about appurtenances, rent, &c., are nothing more than the formal words of the conveyancer; but take them in their strongest sense, and they are limited to the time of John Waugh's death—a time altogether uncertain—and are to be construed with reference to the estate excepted in the conveyance. The rents passing to the grantees are those accruing after the incidents to the life estate are satisfied. It is not as the court below remarks, "that the right of occupancy alone was reserved." It was more—it was an estate of uncertain duration.

*R. G. McCreary*, for defendants in error.—The growing crops and rents, as they became due, belonged to the grantees as appurtenant to the land, and also by the express terms of the conveyance: Bank of Pennsylvania *v.* Wise, 3 Watts 394; Wilkins *v.* Vashbinder, 7 Id. 378; Cobel *v.* Cobel, 8 Barr 342.

The facts agreed upon in the case manifest clearly the intention of the parties that the estate of John Waugh in the lands should pass to the grantees, subject only to his right of occupancy during his life; and to carry into effect this intent is a cardinal rule of interpretation: Hollingsworth *v.* Fry, 4 Dallas 347; Means *v.* Presbyterian Church, 3 W. & S. 303.

The clause providing for the retention of possession by the grantor in the deed, is in the nature of an exception, and is to be held most favorably to the grantees, and consequently could not postpone full

[Waugh's Ex'rs *v.* Waugh.]

enjoyment of the estate by these.longer than during his life : Co. Litt. 183 a; Sheppard's Touchstone 100 ; Bullen *v.* Denning, 5 B. & C. 842 ; Jackson *v.* Hudson, 3 Johns. Rep. 375.

Mr. Justice WOODWARD delivered the opinion of the court, October 1st 1877.

If the estate of John Waugh in the land out of which the rents in controversy accrued, had been strictly and technically that of a tenant for life, the.common-law right of his representatives to those rents, subject to the modification made by the revised statutes of 1833 and 1834, would have been clear. Where a tenant for life sows lands, and then his estate is determined, not by his own act, his executors shall have the growing crops, called emblements. Thus if a tenant for his own life sows the ground, and dies before harvest, his executors shall have the emblements, for the estate was uncertain and determined by the act of God : Co. Litt. 55 b. And if tenant for life leases for years, and the lessee for years sows, and after the lessee for life dies before severance, the lessee for years shall have the corn : Gouldsb. 144, pl. 60. The profits of the growing crops, in case the estate of a tenant for life determines by his death before the produce can be gathered, are given on very obvious principles of justice and policy, as the time of the determination of the estate is uncertain. He who rightfully sows ought to reap the profit of his labor ; and the emblements are confined to the products of the earth arising from the annual labor of the tenant : 4 Kent's Com. 73. By the fifth section of the Act of the 8th of April 1833, it was provided that the emblements, or crops growing on land held by a tenant for life, as well as rents and other periodical payments accruing to such tenant, so far as they should have accrued on the day of his death, might be disposed of by will as other personal estate. And by the seventh section of the Act of the 24th of February 1834, the rents of any real estate accruing to any tenant for life of such estate, who had demised the same for a term not fully expired at his decease, were vested in his executors or administrators, who were required to include in the inventory of his personal estate a due proportion of such accruing rent, to be computed according to the time elapsed at his death. If Mr. Waugh, therefore, had been seised of a freehold for life, to which the rules of the common law and the provisions of the statutes of this state were applicable, there would probably be little embarrassment in adjusting the rights of these parties. The wheat growing at the time when the death occurred had been sown by the lessee for years in the fall of 1873, and was the way-going crop for the year beginning on the 1st of April 1873, and ending on the 31st of March 1874. The landlord's share of the wheat was a portion of the rent of that year. Although severed in the following summer,

it had accrued at the date of the landlord's death in April 1874. If his rights had been those of a tenant for life, it seems obvious that the entire net proceeds of the wheat crop should belong to the executors. The principle of Cobel *v.* Cobel, 8 Barr 342, in which, under similar facts, it was held that rent went to the devisees of the lessor under the will, and not to the executors, is not applicable in a case like this. The decision there was on the ground that no right to the rent accrued until severance. But the lessor in that case was a tenant in fee, and the question in controversy had relation to the effect on growing crops, as personal property, of a conveyance or devise of land. At least, the executors would be entitled to a share of the proceeds of the wheat crop on some system of apportionment, which need not be definitely settled now. The crop of oats was sown in the spring of 1874, and the landlord's share constituted part of the rent of the farm for the year beginning on the 1st of April 1874, and ending on the 31st of March 1875. The precise date of Mr. Waugh's death has not been stated in the paper-books, but it occurred some time in April 1874, and if his executors had been entitled to any portion of this crop, it would be too minute to be worth the labor of calculation. In any event, the plaintiffs below, whose estate in remainder became vested in possession at the instant of the determination of the precedent estate, would be entitled to this portion of the fund in dispute.

A more difficult and doubtful question remains to be considered. What was the nature, extent and limit of John Waugh's interest in this land? He conveyed it to the plaintiffs by a formal deed on the 7th day of April 1873, for the expressed consideration of $2000, with covenants of general warranty. The description of the premises was followed by an exception of 18 acres which he had sold to one Gelbaugh, and that was succeeded by this clause: "Possession of all said premises to be given at the death of the said John Waugh, together with all and singular the buildings and improvements, ways, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of the said party of the first part, in law, equity or otherwise howsoever, of, in, to or out of the same." The deed was acknowledged on the day of its date, and on the following day was recorded.

In the fullest possible form, every interest in this property was transferred except that defined by the words "possession of all said premises to be given at the death of the said John Waugh." What was the right which the grantor retained? By the 5th section of the Act of the 28th of May 1715 (1 Sm. Laws 95), all deeds and conveyances duly made, proved or acknowledged, and recorded, were declared to be of the same force and effect in Pennsylvania

[Waugh's Ex'rs *v.* Waugh.]

for the giving of possession and seisin, and making good the title and assurance of lands, tenements and hereditaments as deeds of feoffment, with livery and seisin, or deeds enrolled in any of the king's courts at Westminster were or should be in the kingdom of Great Britain. Free from the limitation imposed by the provision that possession should be withheld, the deed would have carried to the grantees the entire property in all its existing conditions. The growing crops and the rents that had accrued would have passed as appurtenances of the land. In Wilkins *v.* Vashbinder, 7 Watts 378, Judge SERGEANT said that "in the case of The Bank *v.* Wise, 3 Watts 394, the court came to the conclusion that where the owner in fee sows land, and afterwards, while the crop is growing, conveys or devises the land, the emblements, that is, the corn growing at the time of the conveyance or the death of the testator, will pass with the land to the grantee or devisee. In this opinion, the judge added, "we all upon mature consideration concur." This doctrine has been unqualifiedly affirmed in Cobel *v.* Cobel, 8 Barr 342, and in Burns *v.* Cooper, 7 Casey 426. By the terms of the deed the grantor divested himself of all existing and all ulterior rights, excepting simply that of occupancy during his lifetime. Included in those divested rights were the common-law incidents of an estate for life. It is not necessary to refer to rules that have established the wide extent and operation of the word "hereditament" in a long line of the older precedents, for this deed expressly conveyed "reversions, remainders and rents," as well as "hereditaments." It has been urged that the concluding terms of the grant was a conveyancer's mere meaningless routine, and that like the old *habendum*, these terms have "degenerated," in the language of Chancellor Kent (4 Com. 468), "into a mere useless form." But the premises in a deed now contain a specification of the estate granted, and a consideration of the formal words used here is indispensable to a just conception of the scope of this conveyance. Among the rules of interpretation collected in Sheppard's Touchstone, p. 87, are those requiring "that the construction be made upon the entire deed, and that one part of it doth help to expound another, and that every word (if it may be) may take effect, and none be rejected, and that all the parts do agree together, and there be no discordance therein;" requiring "that the construction be such that the whole deed and every part of it may take effect, and as much effect as may be to that purpose for which it is made, so that when the deed cannot take effect according to the letter, it be construed so that it take some effect or other;" and requiring "that all the words of the deed in construction be taken most strongly against him that doth speak them, and most in advantage of the other party." The characteristics of his tenure of this land were stamped on it by Mr. Waugh himself, and the terms he employed were large enough to denude it of the common-law incidents

of an estate for life. At his death the excepted interest was transmitted to the remaindermen. All other rights, including the title to emblements and rents accruing to his representatives, had been already expressly surrendered and conveyed.

It was competent for the grantor to circumscribe the extent of his life tenancy within any limits he might choose to fix. The rule of the common law relating to emblements extended to every case where the estate for life was determined by the act of God or by the act of the law, and not to the cases where it was determined by the voluntary, wilful, or wrongful act of the tenant himself: 4 Kent's Com. 73. Thus, if a woman who holds lands *durante viduitate sua*—which is an estate for life determinable—sows the lands, and afterwards marries before the severance of the corn, she will not be entitled to emblements, because her estate determined by her own act: Oland's Case, 5 Coke 116 a. · The same principle applies if a lessee surrender, or if an estate determine by forfeiture or condition broken, for it is the act of the lessee: Bissett's Estates for Life 281, and the cases there cited. The like result must be worked with at least equal efficiency by a written agreement expressly surrendering any of the ordinary legal incidents of an estate in land.

It has been said already that the words of a grantor are to be taken most strongly against himself. Another rule in the exposition of deeds has application here. The provision for the retention of possession by Mr. Waugh was an exception from the body of the estate conveyed, and not a reservation of a newly created right of which it was to be the source. And an exception is always taken most in favor of the feoffee or lessee, and against the feoffor or lessor: Shep. Touch. 100. The rule is illustrated in a case quoted in the Touchstone from Perk. Con., § 646: "If a man be seised of a fishing from such a place to such a place, and hath a mill upon the water, and he grant *totam partem suæ piscariæ de D. quatenus terræ suæ extendunt, salvo tamen stagno molendini*; this exception doth not take away the fishing of the grantee in the mill-pond, but it shall have relation only to the pool to repair [supply water to] the mill." " When the intent of the parties is clearly expressed, the intent shall govern the construction; but when the import of words is doubtful, and they are applicable equally in one sense and in another, in this case the construction most in favor of the grantee shall be made :" Preston's Note in Shep. Touch. 101. · In this case the words of the grant are large enough to cover the subject of the controversy. To draw an intendment from them that would retain in the grantor the incidents of a common-law estate for life, would require some constructive strain; and established principles require such a strain to be made only in favor of the grantees. Reversing the position of the parties, and supposing the plaintiffs below to have been the owners of the land

[Waugh's Ex'rs v. Waugh.]

in fee, and to have conveyed to John Waugh the right to occupy it during life, reserving to themselves all hereditaments, reversions, remainders, rents and profits, it would seem clear that no claim of his executors to emblements could have been asserted at his death. The grant was as explicit, as the case stands, as the reservation would have been in the case supposed. Mr. Waugh, at any time before his decease, could have surrendered his life·tenure, and merged it in the remainder ; and while it is conceded that there is room for conflict of opinion in a case so balanced as this, it is still believed that the effect of his deed was to vest in the plaintiffs all those incidents of an estate for life whose assertion in favor of the defendants was the foundation of this litigation.

Judgment affirmed.

Mercur, J., dissents.