# Commonwealth ex rel., Appellant, *v.* Clearview Coal Co.

*Equity—Mines and mining—Coal mines — Deeds — Waiver of surface support—School building—Police power—Right to condemn —Bill in equity—Injunction—Refusal.*

1. It is only in rare cases of overwhelming necessity that private property may be taken or destroyed for the public good.

2. Where a deed conveying underlying coal expressly waives the right of surface support, it is lawful for the grantee to remove all of the coal where its removal is done in a lawful manner, and such removal cannot constitute a public nuisance such as will be restrained in equity. The restraining of such removal would in effect be a taking of private property for public use without compensation.

3. The surface of coal land was conveyed to a school district by deed expressly waiving the right of surface support, and a large school building was thereafter erected upon the property. The subsequent mining of the coal caused serious injury to the building and made necessary the closing of the school. A bill in equity was filed in the name of the Commonwealth at the relation of taxpayers to restrain the owner of the coal from mining it, on the ground that the mining of the coal was a public nuisance. *Held*, the court did not err in dismissing the bill.

4. In such case, the school district under its right of eminent domain could obtain such coal as might be necessary to support its building.

Argued Feb. 21, 1916.   Appeal, No. 119, Jan. T., 1915, by plaintiff, from decree of C. P. Lackawanna Co., March T., 1914, No. 9, in equity, refusing an injunction, in case of The Commonwealth of Pennsylvania, ex relatione John D. Keator and George H. Brown v. Clearview Coal Company, a corporation.  Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Bill in equity for an injunction to restrain mining coal under public school building.  Before NEWCOMB, J.

The opinion of the Supreme Court states the facts.

The court on final hearing dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*George Wharton Pepper,* with him *James E. Davis,* for appellant.—In the exercise of the police power, the Commonwealth had the right to prevent the mining of the coal in such a way as to injure the school buildings: Commonwealth v. Alger, 61 Mass. 53; Commonwealth v. Tewksbury, 52 Mass. 55; Booth v. Rome, Watertown & Ogdensburg Terminal R. R. Co., 140 N. Y. 267.

Defendant's operations constituted a public nuisance: Northwestern Fertilizing Company v. Hyde Park, 97 U. S. 659; Kelley v. New York et al., 27 N. Y. Supp. 164; Manhattan Mfg. & Fertilizing Co. v. Van Keuren, 23 N. J. Eq. 251; Commonwealth ex rel. v. Russell et al., 172 Pa. 506; Penna. Coal Co. v. Sanderson et ux., 113 Pa. 126; N. K. Fairbank Co. v. Nicolai, 112 Ill. App. 261; Mercer County et al. v. Harrodsburg, 66 S. W. Repr. 10; People ex rel. v. Squire, 107 N. Y. 593.

*Ralph W. Rymer* and *M. J. Martin,* for appellee.—Defendant was entitled to the coal underlying the lot occupied by the school building and was under no obligation to support the surface: Scranton v. Phillips, 94 Pa. 15; Moreland v. H. C. Frick Coke Co., 170 Pa. 33; Madden v. Lehigh Valley Coal Co., 212 Pa. 63; Miles v. Pennsylvania Coal Co., 217 Pa. 449; Kellert v. Rochester & Pittsburgh Coal & Iron Co., 226 Pa. 27; Stilley v. Pittsburgh-Buffalo Co., 234 Pa. 492; Graf Furnace Co. v. Scranton Coal Co., 244 Pa. 592.

Defendant's operations do not constitute a public nuisance.

Defendant purchased the land subject to plaintiffs' rights therein: Scranton City v. Phillips, 57 Pa. Superior Ct. 633.

OPINION BY MR. JUSTICE WALLING, January 22, 1917:

By permission of the attorney general, this bill was filed in the name of the Commonwealth, at the relation of two citizens and taxpayers of the school district of the City of Scranton, to restrain the Clearview Coal Company, defendant, from mining coal under and adjacent to a public school building, to the injury thereof, and alleged prejudice of the public school system of the district. The building in question, known as school No. 40, contains sixteen rooms, accommodating 637 students, and is situate in the second ward of the city; it was erected in 1902 on lots purchased by the district from the Robinson heirs by contract in 1896 and consummated by deeds in 1900. Both the contract and deeds contain reservations of coal and minerals in the following terms:

"All coal and minerals under said lots, however, are reserved to the grantors with the right to mine and remove the same without incurring in any way liability for any damage to the surface of said lots, or to any buildings or improvements which may be or have been placed thereon."

And in one deed the following clause was added:

"And the grantee covenants and agrees to accept the conveyance of this land, subject to the above exceptions, reservations and conditions, waiving support of the surface."

This land was underlaid with eleven separate veins of coal located at varying depths from the surface. The entire Robinson tract contains 26 acres, and adjoining the same is a piece of land known as the Earl & Griffith tract. Prior to the purchase of the lots by the school district, certain portions of the coal in said tracts had been leased to third parties and some mining thereof had been done. Subsequently in 1909 defendant obtained general leases of the coal under said tracts, authorizing and requiring it in substance to remove all the available coal remaining in the tracts. At large expense it sank a shaft and made all necessary preparations to successfully and skill-

fully carry on mining operations, which it proceeded to do, and removed and was removing the coal without providing adequate surface supports; and in 1914, when such operations had reached the vicinity of said building and caused it serious injury, this suit was brought. At about the same time the use of the building for school purposes was abandoned and the pupils there attending were sent to other schools, which resulted in overcrowding and less school efficiency. After full hearing the court below dismissed the bill.

The school district in the purchase of the land expressly waived the right of surface support and perhaps unfortunately erected its building where the title to all the coal and the right to remove it was in another. So far as appears there was neither fraud nor concealment. The mining of coal is lawful; and where, as in this case, the right to surface support is expressly waived it is lawful to remove all of the coal; and it is difficult to understand how the doing of a lawful act in a lawful manner can constitute such a public nuisance as will be restrained in equity. For practical purposes, the right to coal consists in the right to mine it. An order of court that the coal or any part of it must remain permanently unmined as a support to the school building practically takes such coal from defendant and vests it in the school district. It would in effect be a taking of private property for public use without compensation, which the Constitution forbids.

Unmined coal is real estate, and the school district under its right of eminent domain by paying for the same can take all of the coal in question which may be necessary to support its building. Certainly the school district cannot directly take such property without compensation to the owner, neither can it do so indirectly under the police power of the Commonwealth.

It is only in rare cases of overwhelming necessity that private property may be taken or destroyed for the public good. It may sometimes be done, for example, by the

destruction of a building to stay the spread of a great fire or of a disastrous flood. But this is not such a case. And it makes no difference that other school buildings are similarly situated. If the school district of a city were to erect a system of public schools upon leased ground, you could not 'at the expiration of the lease defeat the lessor's right of reëntry on the ground' that to do so would cause irreparable injury to the public schools. The primary obligation of furnishing adequate school buildings rests upon the district and if any are found to be without surface support, or upon leased premises, the district must under existing laws supply the deficiency, by condemnation or otherwise.

The assignments of error are overruled and the decree is affirmed.