## Lentini v. Hager

*Sanford S. Marateck*, for plaintiffs.
*Louis Cohen*, for defendants.
*Charles M. Menapace*, for additional defendant.

KIVKO, P. J., September 4, 1975— Plaintiffs and defendants are owners of the western and eastern "halves" respectively of a 30-foot lot in the Borough of Kulpmont. The matter before us involves a dispute over the interpretation of an easement reserved over the eastern portion of the land conveyed by the common grantor to defendants in favor of the western parcel of land conveyed to plaintiffs.

The language of the easement reserved the "right . . . to use a passageway, Fifteen (15') feet in width," from the northern side of the parcel conveyed "for any and all purposes connected with the use and occupation of other land now owned by the Grantors adjoining the parcel conveyed." The deed describes the parcel as 150 feet long and 15 feet wide.

Plaintiffs brought an action in equity to enjoin defendants from erecting a fence along the common boundary line and from, in any way, interfering with the 15-foot passageway reserved in the deed. Defendants deny plaintiffs' claim of an unlimited passageway over the land. They also deny that the proposed erection of a fence would consti-

tute an infringement upon plaintiffs' rights. Defendants brought the common grantor of both of these parcels as an additional defendant, alleging that defendants purchased their portion of the property under a mutual understanding that the property would be subjected to an easement limited to a passageway for a coal truck to deliver coal to the western one half of the dwelling unit erected on the southern end of the lot owned by plaintiffs; that the language of the easement inserted in the deed was erroneous; that the deed should be reformed to reflect the true understanding of the parties, and that, if defendants are in any way liable to plaintiff, the additional defendant is jointly liable with them.

After hearing held and due consideration of the testimony taken, we make the following

## FINDINGS OF FACT

Plaintiffs, Antonio Lentini and Maria Francesca Lentini, his wife, by deed dated August 30, 1969, recorded on September 12, 1969, in deed book 482, page 467, conveyed to their son, Peter S. Lentini, the additional defendant, as trustee for them, lot 10 in block No. 27 in the Borough of Kulpmont, 30 feet in width on Spruce Street and extending of that width northward 150 feet to Walnut Street, on which is erected a double frame-dwelling fronting on Spruce Street, No. 624-626 Spruce Street, and a single dwelling fronting on Walnut Street, No. 627 Walnut Street.

By deed dated October 16, 1971, recorded on October 26, 1971, in deed book 497, page 236, additional defendant conveyed to defendants, Joseph G. Hager and Mary Ann Hager, his wife, the eastern one half of said lot, described as extending for a width of 15 feet a distance of 150 feet from

Spruce Street to Walnut Street, on which is erected the eastern one half of the double dwelling, No. 624 Spruce Street. Following the description of the land conveyed, the deed contains the following clause which gives rise to the instant dispute:

"EXCEPTING AND RESERVING unto the Grantors, their heirs and assigns, the free liberty and right at all times hereafter forever to have and use a passageway, Fifteen (15) feet in width, extending from the southern line of Walnut Street and the northern end of the Lot hereby granted, for any and all purposes connected with the use and occupation of other land now owned by the Grantors adjoining the parcel hereby granted."

By deed dated April 5, 1972, recorded on April 12, 1972, in deed book 500, page 447, additional defendant reconveyed to his parents, plaintiffs, the western one half of lot No. 10, described as extending for a width of 15 feet a distance of 150 feet from Spruce Street to Walnut Street, on which is erected the western one half of the double dwelling, No. 626 Spruce Street, and the single dwelling No. 627 Walnut Street.

A survey of lot No. 10, made by Harry Jones, a registered professional engineer, on July 30, 1974, at the request of the court and consented to by the parties, discloses the following:

Each side of the double dwelling fronting on Spruce Street is 12 feet, 7 inches wide. An open passageway leading from Spruce Street alongside the western side of plaintiffs' house to the rear of the house is 2 feet, 10 inches wide. The passageway on the eastern side of defendants' house is 2 feet wide. The center line of the partition wall of the double dwelling is, therefore, five inches east of the center line of lot No. 10, making the physical front-

age along Spruce Street of defendants' eastern "one half" of the lot 14 feet, 7 inches in width and plaintiffs' western "one half" of the lot 15 feet, 5 inches in width.

The center line of the lot from the northern side of the double dwelling—15 feet from the eastern and western boundaries of the lot—extends northward to Walnut Street for 105 feet free from obstructions, except for three overhead awnings on the eastern side of plaintiff's single dwelling which extend 1 foot, 2 inches and one which extends 9 inches over the eastern one half of the lot.

The dwellings on this and other lots fronting on Walnut Street are not entirely within their respective lot lines shown on the official borough plan. The single dwelling, with a basement door in its eastern side, is 14 feet, 10 inches wide, but it comes to within 14 inches west of the center line of the lot. This allows a clearance of only 14 inches on plaintiffs' half of the lot as a passageway alongside the house to and from the basement door and either Walnut Street on the north or Spruce Street on the south.

Between plaintiffs' two dwellings—the single on the north side of the lot and half of a double on the southern side—is a raised portion of land used as a garden and protected by an eight-inch high curb. Along the eastern side of this curb is a concrete sidewalk five and one-half feet in width, extending from the double to the single dwelling. The western portion of this sidewalk, varying in width from approximately 27 inches to 29 inches is on plaintiff's side of the center line. Defendants placed five one-inch iron posts in defendants' portion of this sidewalk, from two inches to four inches east of the center line, intending to erect a fence thereon.

The entire lot slopes downward from Walnut

Street to Spruce Street. A concrete ramp, ten feet wide, adjoining plaintiffs' land, extends from Walnut Street for a distance of eight feet over defendants' property. An extension of the ramp, narrowing unevenly to approximately five feet, covered by macadam and in various stages of disrepair, continues northward to a sidewalk which adjoins and runs across the rear of the double dwelling. The concrete ramp at the Walnut Street end has a rise of two feet in eight feet, a 25 percent grade, presenting a hazard for vehicle and pedestrian use.

Plaintiffs use the portion of defendants' lot opposite the single dwelling for picnic and other recreational purposes.

Both sides of the double dwelling are heated with coal. The coal bins are located on the northern side of their basements. The only practical means of delivering the coal to both sides is by truck from Walnut Street over the vacant portion of defendant's lot. This has been done for years and the concrete and macadam in the lot were placed there to provide a hard surface to support such loads. The parties intended that this use should be preserved for the benefit of the western half of the double dwelling.

Prior to the severance of the ownership of the lot by conveyances of the eastern portion to defendants, and since then, the occupiers of the western half of the double dwelling had an uninterrupted pedestrian passageway from the dwelling to the basement of the single dwelling and to Walnut Street, and the occupiers of the single dwelling had an uninterrupted pedestrian access to and from their basement door and Walnut Street on the north and Spruce Street on the south. If the passageway

is narrowed to the 14-inch clearance between the single dwelling and the center line of the lot, such access would be severely limited. The parties intended that the use of a free and uninterrupted pedestrian passageway between Walnut Street and Spruce Street should be preserved for the benefit of the owners, occupiers and users of the western portion of the lot.

## DISCUSSION AND CONCLUSIONS OF LAW

It is clear that the conveyance of the eastern portion of the lot No. 10 to defendants was to be subject to an easement of a passageway for the benefit of the grantor, his heirs and assigns for the benefit of the adjoining western portion of the lot. The nature and extent of such reservation is not clear.

The language of the reserving clause states that it is 15 feet wide "extending from the southern line of Walnut Street and the northern end of the Lot hereby granted." These phrases designate one and the same beginning line. The clause fails to state the terminal line of the easement. If it extends the entire length of the lot, it goes through the eastern portion of the double dwelling.

The width of the easement expressed in the reservation clause is the width of the lot. An easement of that width for use as a "passageway . . . for any and all purposes connected with the use and occupation" of the adjoining parcel deprives defendants and their children of the use and enjoyment of their land, considered normal incidents of home ownership, without any conceivable need by plaintiffs for a "passageway" of such dimensions.

The language in the reservation clause is vague and fails to express the intention of the grantor and the grantees. In construing a deed or an agreement or a reservation therein, it is the intention of the parties at the time of entering in thereto that governs. Such intention is to be gathered from a reading of the entire instrument. But if the deed, agreement or reservation therein is obscure or ambiguous, such intention is to be ascertained not only from the language of the entire instrument, but also from a consideration of the subject matter and the surrounding circumstances: Commonwealth v. Fitzmartin, 376 Pa. 390, 102 A. 2d 893 (1954); New Charter Coal Company v. McKee, 411 Pa. 307, 197 A. 2d 830 (1963); Plasterer Estate, 413 Pa. 513, 198 A. 2d 525 (1964).

Taking these circumstances into consideration, the nature of the passage required by plaintiffs over defendants' land, the physical evidence on the ground of how such need was met during common ownership of lot No. 10, the understanding of the parties at the time of the conveyance to defendants, and the entire record in the case, we conclude that the sole purpose of the reservation clause was to preserve for the benefit of the western portion of the lot, the dominant tenement, an easement over defendants' land, the servient tenement, of a free and uninterrupted passage (1) for the delivery of coal from Walnut Street to the coal bin in the dwelling numbered 626 Spruce Street, and (2) for pedestrian traffic between Spruce Street and Walnut Street.

The conveyance to defendants granted to them all the incidents of ownership of the land conveyed, subject, however, to such an easement and to the burdens incident thereto. Since the parties failed

and refused to mutually agree on the nature of the easement and burdens imposed to support it, it becomes incumbent on the court as a court of equity to do so: Werry v. Sheldon, 148 Pa. Superior Ct. 13, 24 A. 2d 631 (1942).

We, therefore, enter the following

## DECREE NISI

And now, September 4, 1975, it is ordered, adjudged and decreed as follows:

1. The boundary line between the property conveyed by Peter Lentini, Trustee, to Joseph G. Hager and Mary Ann Hager, his wife, by deed dated October 16, 1971, recorded in deed book 497, page 236, described therein as the eastern one half of lot numbered 10 in block numbered 27 in the Borough of Kulpmont, on the southern end of which is erected the eastern one half of a double dwelling known as No. 624 Spruce Street, and the property conveyed by the same grantor to Antonio Lentini and Maria Francesca Lentini, his wife, by deed dated April 5, 1972, recorded in deed book 500, page 447, described therein as the western one half of said lot, on the southern end of which is erected the western one half of said double dwelling known as No. 626 Spruce Street and on the northern end of which is erected a single dwelling known as No. 627 Walnut Street, is hereby determined to be and is established as the line shown as such on the survey of said lot by Harry W. Jones, R.E., dated July 30, 1974, a copy of which is attached hereto, made a part of this decree and described as follows:

"Beginning at a point in the northern side of Spruce Street in the partition wall between the two sides of said double dwelling, said point being fourteen (14) feet seven (7) inches from the eastern boundary of Lot thirty (30) and fifteen (15) feet five (5) inches from the western boundary of said lot; thence in a northerly direction through said partition wall to the northern side of said dwelling to a point; thence at a point fifteen (15) feet from the eastern and western boundary lines of the lot in a northerly direction equidistant from said boundary lines to the southern side of Walnut Street."

2. The reservation clause in the aforementioned deed from Peter S. Lentini, Trustee, to Joseph G. Hager and Mary Ann Hager, his wife, is reformed to read as follows:

"EXCEPTING and RESERVING unto the grantors, their heirs and assigns, the free and uninterrupted liberty and right at all times hereafter

"(1) to have and use as a passageway for pedestrian traffic a strip of land one (1) foot ten (10) inches wide along the western boundary of the land herein conveyed, extending southward from Walnut Street for a distance of forty-three (43) feet, and thence southward for a width of eight (8) inches to the concrete patio adjoining the double dwelling;

"(2) to have and use as a passageway for motor trucks delivering coal to the dwelling numbered 626 Spruce Street a strip of land the width of the lot herein conveyed, extending southward from Walnut Street for a distance of twenty (20) feet, and thence southward for a width of nine (9) feet adjoining the strip of land described in the paragraph immediately above numbered (1) to said concrete patio; together with the right to remove the coal

from the truck and deliver it to said dwelling in a manner that is reasonable and proper for such purpose."

3. Defendants, their heirs and assigns, shall provide and maintain such a gate along Walnut Street and such a grade and hard surface over the land described in paragraph numbered 2 (2) above as shall be appropriate for the easement therein reserved.

4. Defendants are enjoined from erecting or maintaining a fence along the common boundary line or on the strip of land described in paragraph numbered 2 (1) above and are ordered and directed to remove fence posts and other obstructions erected thereon within 60 days from the date of this decree.

5. Defendants, their heirs and assigns, shall have the right to fully use and enjoy all of their land in any manner, including the right to erect and maintain a fence thereon, as shall not interfere with the easements excepted and reserved in paragraph 2 above.

6. The costs, including the cost of the survey, shall be paid equally by plaintiffs, Antonio Lentini and Maria Francesca Lentini, and defendants, Joseph G. Hager and Mary Ann Hager.

7. A certified copy of this decree shall be recorded in the office of the recorder of deeds and indexed under the name of Peter S. Lentini, Trustee for Antonio Lentini and Maria Francesca Lentini, as grantor, and Joseph G. Hager and Mary Ann Hager, his wife, and Antonio Lentini and Maria Francesca Lentini, his wife, as grantees, and a reference to said certified copy of the decree shall be noted on the margin of the deeds from said grantor

to said grantees entered, respectively, in deed book 497, page 236, and in deed book 500, page 447.

8. If no exceptions are filed within 20 days after notice of the filing of this adjudication, this decree shall become final.