The trial court entered the following opinion and order in this case:
 OPINION AND ORDER
"This case has been submitted for decision by this Court on the Motion for Summary Judgment filed by the defendant United States Steel Corporation (`U.S. Steel').
"Plaintiff, Eastwood Lands, Inc., a corporation (`Eastwood') is the owner of a parcel of land (hereafter referred to as the `Shopping Center Property'), containing approximately 1.43 acres and located in southwest quarter of the southwest quarter of Section 28, Township 16 South, Range 4 West, in Jefferson County.
"All of the Shopping Center Property was originally owned by Tennessee Land Company. In 1938, Tennessee Land Company conveyed two tracts of land which included the Shopping Center Property to two separate sets of purchasers.
"According to the recorded deeds, Robert L. Smith purchased one tract consisting of 7.84 acres for the purchase price of $450, and Roy V. and Clara Bell Shell purchased the other tract consisting of 8.58 acres for the purchase price of $500.
"In both deeds, Tennessee Land Company retained for itself or Tennessee Coal, Iron Railroad Company, or their respective successors, the right to mine and remove coal and other minerals from the land without leaving support necessary for sustaining the surface of the land or for preventing damage thereto.
"Both deeds also provided that no right of action for damages on account of injuries to the land or any improvements on the land conveyed, resulting from mining operations should ever accrue to or be asserted by the purchasers or their successors in title and that `this condition shall constitute a covenant running with the land against the Grantee and all persons, firms or corporations holding under or through said Grantee.'
"These two deeds were duly recorded in the Probate Office of Jefferson County, Alabama, and therefore constituted notice to all persons of the mineral interest excepted from the conveyances and of the rights reserved to Tennessee Land Company and Tennessee Coal, Iron Railroad Company.
"Since Eastwood's title extends from the above two deeds executed by Tennessee Land Company, Eastwood was itself on notice of these rights. In addition, two of the deeds in Eastwood's chain of title recite that the conveyance of the property described *Page 166 
in each of the deeds is `subject to all mineral, mining and damages rights, they being retained by the Tennessee Coal, Iron Railroad Company.'
"One deed naming Eastwood as grantee states, `minerals and mining rights and privileges are excepted.'
"In its complaint, Eastwood makes claim against U.S. Steel for damages, stating in substance that Eastwood has constructed a shopping center on the Shopping Center Property and that as a result of the mining operations conducted under the surface of the Shopping Center Property by U.S. Steel, the surface of the same was caused to subside, on and subsequent to August 13, 1979, causing the buildings comprising the shopping center to collapse, break and tear apart rendering them uninhabitable.
"In a second count of the complaint, Eastwood alleges that U.S. Steel negligently conducted such mining operations thereby causing the damages already described.
"As grounds in support of its Motion for Summary Judgment, U.S. Steel first presents evidence, not contradicted, that it is the successor to Tennessee Land Company and Tennessee Coal, Iron Railroad Company, and that the provisions in the original deeds from Tennessee Land Company, giving it the right to mine coal and other minerals and releasing it from all damages thereby resulting, bars Eastwood from any recovery in this case.
"In Pennsylvania Coal Company v. Mahon, 260 U.S. 393, [43 S.Ct. 158, 67 L.Ed. 322] (1922), a statute (the Kohler Act) enacted by the Pennsylvania legislature prohibited the mining of coal in such a way as to cause the subsidence of any structure used as a human habitation. Pennsylvania Coal Company nevertheless gave notice of its intent to mine under dwellings in a Pennsylvania town without complying with the requirements of the statute.
"A number of persons then brought suit to prevent the Company from mining under their property in such a way as to remove the supports and cause a subsidence of the surface. They argued that the statute was a valid exercise of the state police power for the purpose of protecting the safety of its people. However, the U.S. Supreme Court reversed the decision in favor of the individual owners, holding that the Pennsylvania statute was unconstitutional, being a deprivation of the Company's property without due process.
"Justice Holmes, speaking for the majority of the Court, stated in his opinion:
 `. . . The deed conveys the surface, but in express terms reserves the right to remove all coal under the same, and the Grantee takes the premises with a risk, and waives all claim for damages that may arise from mining out the coal.
* * * * * *
 `. . . It is our opinion that the act cannot be sustained as an exercise of the police power, so far as it affects the mining of coal under streets or cities in places where the right to mine such coal has been reserved. As said in a Pennsylvania case: "For practical purposes, the right to coal consists in the right to mine it." Com. ex rel. Keator v. Clearview Coal Co., 256 Pa. 328, 331, L.R.A. 1917 E., 672,100 A. 820. What makes the right to mine coal valuable is that it can be exercised with profit. To make it commercially impracticable to mine certain coal has very nearly the same effect for constitutional purposes as appropriating or destroying it. Thus we think that we are warranted in assuming that the statute does.
* * * * * *
 `The rights of the public in a street purchased or laid out by eminent domain are those that it had paid for. If in any case its representatives have been so short sighted as to acquire only surface rights, without the right of support, we see no more authority for supplying the latter without compensation than there was for taking the right of way in the first place, and refusing to pay for it because the public wanted it very much. . . .' *Page 167 
"In Republic Steel Corp. v. Payne, 272 Ala. 483,132 So.2d 581 (1961), Republic conveyed a parcel of land by deed containing a broad release quite similar to the lease involved in the present case, barring any cause of action by the grantees, or their successors, arising from operations by Republic on its remaining land adjacent to the parcel conveyed. The plaintiffs, who were lessees of the persons purchasing the property from Republic, brought suit against Republic for injuries allegedly suffered by them as a result of inhaling smoke, fumes, and gases emanating from a rock pile maintained by Republic on its adjacent land. Reversing a judgment in favor of the plaintiffs, the Alabama Supreme Court stated:
 `An owner of property in fee can dispose of it with such a restriction imposed and (except by eminent domain) could not be compelled to sell it on any other terms. The grantee who accepts the property with this limitation or servitude on the right to use it has no lawful complaint and neither he nor any persons succeeding to his estate with notice, actual or constructive, of the restriction imposed can, by judicial fiat, invoke the enlargement of the estate which was not purchased or conveyed. The benefit of this reservation follows the title and serves the dominant estate and the successor entitled to the original grantee, with notice of the servitude, are bound by it.
* * * * * *
 `The manifest intention of the parties to the deed, as gathered from the language used, was that there be reserved or created an estate in favor of Republic to do the very things complained of.'
"Also see, Southern Furniture Mfg. Co. v. Mobile County,276 Ala. 322, 161 So.2d 805 (1963); Griffin v. Fairmont Coal Co.,59 W. Va. 480, 53 S.E. 24 (1905); 54 Am.Jr.2d Mines Minerals, ¶ 203.
"The language contained in the original deeds from Tennessee Land Company is clear and unambiguous. There is reserved to Tennessee Land Company and Tennessee Coal, Iron Railroad Company an absolute right to mine under the property conveyed and a full and complete release is extended to those companies by the owners and successors in interest of the surface rights to the property conveyed. Eastwood was on notice of the provisions in these two deeds at the times when it acquired the various parcels comprising the Shopping Center Property. It then acquired the Shopping Center Property subject to any conditions then existing which might make it unsuitable for the erection of a shopping center and also subject to any operations which U.S. Steel might later conduct which might make it unsuitable for a shopping center. As recited in the two deeds from Tennessee Land Company, the rights and releases there provided run with the land and are binding on Eastwood.
"Eastwood's claim based on negligence is also barred by the reservations and releases set forth in the original deeds from Tennessee Land Company. In Alabama Great Southern RailroadCompany v. Sumter Plywood Corporation, 359 So.2d 1140 (Ala. 1978), the Supreme Court of Alabama stated that it is the general rule in this state that a party may not contract against the consequences of his own negligence. However, the Supreme Court recognized that there is an exception to this general rule which applies in cases where an exculpatory clause involves leases or other incidents to ownership of land.
"Furthermore, the decision of the Supreme Court in AlabamaGreat Southern, supra, was modified by the Supreme Court's decision in Industrial Tile, Inc. v. Stewart, 388 So.2d 171
(Ala. 1980). Referring to indemnity agreements in the decision last cited, the Supreme Court stated:
 `. . . However, after carefully reviewing all of the authority in this state, we are compelled to conclude that, if the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld. To the extent that Alabama Great *Page 168 Southern Railroad Company v. Sumter Plywood Corp., supra, holds otherwise, it is hereby modified.'
"The provisions in the original deeds from Tennessee Land Company are therefore valid and binding on subsequent grantees including Eastwood. As a consequence, Eastwood may not now maintain an action against U.S. Steel or any of its subsidiaries for damages resulting from mining operations carried on by U.S. Steel under the land owned by Eastwood.
"In accordance with this opinion, the Motion for Summary Judgment filed by U.S. Steel is hereby granted. Judgment is hereby rendered in favor of U.S. Steel and all other defendants and against Eastwood Lands, Inc. All costs of Court incurred in this proceeding are taxed against the plaintiff, Eastwood Lands, Inc."
Eastwood timely filed an appeal to this Court. Eastwood argues on appeal that the trial court's entry of summary judgment for U.S. Steel was erroneous because (1) Eastwood should have been allowed more time to conduct discovery to ascertain whether U.S. Steel conducted its mining operations in a negligent manner; (2) the reservation or covenant in the deeds in this case is not as specific as the one in theRepublic Steel case relied upon by the trial court, and so that case is distinguishable; and (3) the clause under which Eastwood is denied a cause of action is void as against public policy.
We believe that the reasoning in Republic Steel Corporationv. Payne, 272 Ala. 483, 132 So.2d 581 (1961), disposes of the first two of these arguments. While it is true that the reservation involved in that case was more detailed as to types of damages for which the grantee would have no cause of action against the grantor, it is also true that the reservation in Eastwood's chain of title explicitly and unambiguously bars Eastwood from bringing suit based on U.S. Steel's failure to provide support.[1] "The manifest intention of the parties to the deed, as gathered from the language used, was that there be reserved or created an easement in favor of Republic to do the very things complained of." Id., 272 Ala. at 488,132 So.2d 581. "[T]he right to subjacent support, unless waived byexpress stipulation, is absolute." Republic Iron Steel Co. v.Barter, 218 Ala. 369, 118 So. 749 (1928) (emphasis added).
We do not find reversible error in Eastwood's contention that the trial court should have allowed it more time to conduct discovery. This Court in Republic Steel, supra, held that the clause in the Paynes' lessor's deed barred actions based on negligence, even though the word "negligence" was not mentioned, because the "provisions exonerat[ed] Republic `fromany and all claims for damages. . . ." Id., 272 Ala. at 489,132 So.2d 581 (emphasis in original). The deeds from the Tennessee Land Company recite that "no right of action for damages on account of injuries to the land herein conveyed or to any buildings . . . *Page 169 
resulting from past or future mining operations . . . shall ever accrue . . ., this conveyance being made expressly subject to all such injuries, either past or future . . ." (emphasis added). The import of this clause is clearly the same as that in the Republic Steel case: the grantee and its successors have no cause of action arising from the grantor's activities for injuries which affect the land conveyed.
We are also compelled to hold against Eastwood on its public policy argument. As the trial court's reliance on PennsylvaniaCoal Company v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322
(1922), indicates, to do otherwise arguably would be to deprive U.S. Steel of property without due process of law. Pursuant to the covenants in the recorded Tennessee Land Company deeds, and under a reasonable interpretation of Pennsylvania Coal andRepublic Steel, U.S. Steel had the right to mine this property without fear of being sued for subsidence of the surface. For a court now to allow a suit for this very type of damage would be to work an "enlargement of the estate which was not purchased or conveyed," Republic Steel, supra.
Neither is Eastwood to be heard that this works a deprivation of its property rights. It sought this land out for purchase and was under a legal duty to inspect the title which it was acquiring. It argues that reservations of mineral rights are so common that notice of such a reservation is not notice that the purchaser would have no recourse if the very surface it was purchasing subsided. This is to say that perhaps Eastwood did not read the Tennessee Land Company deeds carefully. To allow such an argument to prevail would be to ignore the constructive notice of recorded deeds to which purchasers are held.
We hasten to add that this holding is limited to the facts of this case and should not be construed as any expression of opinion in cases where intentional torts are involved or where the subsurface is put to a use beyond a reasonable interpretation of the reserving instrument. The judgment of the trial court is therefore affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, BEATTY and ADAMS, JJ., concur.
FAULKNER and EMBRY, JJ., dissent.
[1] The covenants in the deeds from Tennessee land company read as follows:
"This conveyance is made upon the covenant and condition that the ______ Tennessee Land Company ______, hereinafter referred to as `Mineral Owner,' or its successors, assigns, licensees, lessees or contractors shall have the right, which is hereby — reserved — to said Mineral Owner, its successors, assigns, licensees, lessees or contractors, to mine and remove the coal and other minerals contained in said land without leaving supports necessary for sustaining the surface of said land or for preventing damage thereto; and that no right of action for damages on account of injuries to the land herein conveyed or to any buildings, improvements, structures, pipe lines or other sources of water supply now or hereafter located upon said land, or to any owners or occupants or other persons in or upon said land, resulting from past or future mining operations of the Mineral Owner, or its successors, assigns, licensees, lessees or contractors, or resulting from the removal of coal and other minerals or coal seam or other roof supports by the Mineral Owner, or its successors, assigns, licensees, lessees or contractors, shall ever accrue to or be asserted by the Grantee herein or by said Grantee's successors in title, this conveyance being made expressly subject to all such injuries, either past or future, and this condition shall constitute a covenant running with the land as against the said Grantee and all persons, firms or corporations holding under or through said Grantee."