These are appeals by 128 landowners from summary judgments rendered in favor of United States Steel Corporation (now known as USX Corporation), Alabama Title Company, Inc., Commonwealth Land Title Insurance Company, Lawyers Title Insurance Company, Mississippi Valley Title Insurance Company, and Jefferson Land Title Services Company, Inc.
The appellants are owners of surface tracts located in the Willow Bend subdivision in Bessemer. The surface and mineral estates in this area were originally owned by Woodward Iron Company. On March 22, 1943, Woodward Iron Company conveyed the surface to A.R. Patton by deed, excepting all mineral and mining rights and reserving for itself, its successors, assigns, licensees, or contractors, the right to mine and remove minerals without leaving supports to sustain and prevent damage to the surface of the land. The deed was recorded on March 25, 1943, in the Probate Office of Jefferson County (Bessemer Division), Volume 281, page 404, and provided in pertinent part as follows:
 ". . . [N]o right of action for damages on account of injuries to the land above-described or to any buildings, improvements, structures, wells or water courses now or hereafter located upon said land or to any owners or occupants or other persons in or upon said land, resulting from past or future mining operations of Woodward Iron Company, or its successors, assigns, licensees or contractors or resulting from the removal of coal and other minerals or coal seam roof supports by the Woodward Iron Company or its successors, assigns, licensees, lessees or contractors shall ever accrue to or be asserted by the grantee herein, his successors or assigns, this conveyance being expressly subject to all such injuries either past or future and this condition shall constitute a covenant running with the land as against the said grantee and *Page 924 
all persons, firms or corporations holding under or through him."
All appellants are successors in title to the surface estate of A.R. Patton. There is no dispute that the appellants are subject to the quoted covenant contained in the 1943 deed.
By deed dated September 29, 1955, and an additional instrument, both recorded in the Probate Office of Jefferson County (Bessemer Division), U.S. Steel became the successor and assign of Woodward Iron Company in ownership of the mineral rights beneath the appellants' respective surface tracts and in the release from liability for damage to the surface, or to improvements and persons thereon, arising from past or future mining operations.
The Concord Mine, owned by U.S. Steel, covers some 25 square miles in western Jefferson County. It is located in part beneath the Willow Bend subdivision. Mining under the subdivision was begun by U.S. Steel on August 13, 1968, and was concluded on February 19, 1975. The appellants purchased their homes in the Willow Bend area over a period of time beginning December 29, 1976, and ending July 15, 1981. The mine was abandoned and sealed in March 1982.
In January 1983, residents of the Willow Bend subdivision relayed reports to the Office of Surface Mining, U.S. Department of the Interior, of tremors and the appearance of surface fractures on their land. The Office of Surface Mining, hereinafter referred to as OSM, has the statutory authority to investigate possible subsidence in abandoned coal mine areas and, in certain instances, to take remedial measures.[1] Pursuant to that authority, OSM conducted a survey of the area.
OSM was initially concerned that methane gas might be escaping through the surface fractures, creating a potentially hazardous condition. Consequently, OSM surveyed all the fractures with a highly sensitive gas detector, but found no gas. Recognizing, however, that the fractures might eventually serve as a means for the methane gas to migrate out of the Concord Mine, a mine which had previously been classified as "gassy," OSM installed steel pipes into the mine to safely vent the methane gas into the atmosphere, where it would dissipate. OSM also determined that the ceiling of the Concord Mine had collapsed, causing subsidence of the surface and damage to land and homes in the Willow Bend area.
The landowners contend that the trial court erred in granting summary judgment in favor of U.S. Steel on claims of negligence, wantonness, trespass, and nuisance. The landowners also contend that the trial court erred in granting summary judgment in favor of the title companies and title insurance companies on claims of fraud, breach of contract, and negligence for failing to adequately apprise the landowners, when issuing commitments for mortgagees' and owners' policies of title insurance on the surface tracts, of the significance and effect of the exculpatory covenant in the 1943 deed, to which they were subject.
The landowners contend that the 1943 deed's exculpatory provision does not bar their actions against U.S. Steel predicated on negligence, wantonness, trespass, and nuisance. We disagree.
In Eastwood Lands, Inc. v. United States Steel Corp.,417 So.2d 164, 168 (Ala. 1982), the Court held that a provision in a deed reserving to the grantor and its successors the right to mine and remove minerals without leaving support for the surface, identical in wording to the deed in the case before us, barred any cause of action arising from those activities for damage to the surface and buildings or injury to persons thereon. Even though that case dealt specifically with the effect of the exculpatory provision on a negligence cause of action, the holding was not limited to negligence actions. The provision in Eastwood Lands and the provision in the present case *Page 925 
unambiguously bar any and all claims arising from the grantor's or its successor's mining activities.
In Eastwood Lands, the cause of action based on negligence was precluded even though the word "negligence" was not mentioned in the deed. The Court relied on an earlier case involving a similar provision, Republic Steel Corp. v. Payne,272 Ala. 483, 132 So.2d 581 (1961), where the Court said:
 "Apparently, the trial court took the position, as do appellees, that since the exculpatory provisions of the deed make no mention of 'negligence', it was not intended to exonerate Republic from liability for its negligence, particularly in view of the rule that such provisions should be strictly construed against exoneration. Although the word 'negligence' is not used, it seems to us it was clearly intended to release Republic from liability for its negligence. Otherwise, most of the exculpatory provisions, including the covenant not to sue, would be without meaning. It is difficult to see how such provisions could have been more comprehensively drafted to relieve Republic from liability for damages, whatever might be the basis therefor, except, perhaps by specifically using the word 'negligence.' But failure to use such word is not alone determinative of the intention of the parties. [To hold otherwise] would be to disregard the plain and unambiguous wording of those provisions exonerating Republic 'from any and all claims for damages either to persons or property which may in any way be caused or occasioned at any time,' and the covenant not to sue." 272 Ala. at 489, 132 So.2d at 585.
Accordingly, we hold that even if the landowners could produce a scintilla of evidence of nuisance or trespass by U.S. Steel or of evidence that U.S. Steel conducted its mining activities in a negligent or willful and wanton fashion, the unambiguous language in the deed effectively bars all such claims.
The landowner's claims against the five title companies and title insurance companies are likewise without merit. The trial court held that the exceptions from insurance coverage, set out in the companies' title commitments and owner's and mortgagee's policies, of all mineral and mining rights and privileges and immunities relating thereto, by virtue of the instruments recorded in the office of the Judge of Probate of Jefferson County, completely discharged whatever duty, contractual or otherwise, the companies owed to the landowners. We agree.
The purpose of title insurance is not to protect the insured against loss arising from physical damage to property; rather, it is to protect the insured against defects in the title. Title companies and title insurance companies are not required to explain the significance and effect of exculpatory covenants and the like discovered in their title searches.
Summary judgment is proper "when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Sadie v. Martin, 468 So.2d 162, 165 (Ala. 1985); see generally, Rule 56(c), A.R.Civ.P. Accordingly, the judgments of the trial court are due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.
[1] If the employees of OSM certify that a potential danger exists, and that no other entity is likely to take remedial measures, federal funds can be released to OSM to have remedial measures taken by contractors working under the direction of the agency. See, 30 U.S.C. § 1239, 30 C.F.R., Chapter VII, Subchapter R.