This is an appeal from a judgment on a jury verdict awarding the plaintiff, Joseph B. Lynn, $275,000 in a fraud action, and from the denial of defendant's post-trial motions. The alleged fraud was a misrepresentation of the coverage under an insurance policy purchased by Lynn. The defendant, State Farm Fire and Casualty Insurance Company ("State Farm"), sold the policy to Lynn. When Lynn made a claim on the policy, State Farm denied coverage on the basis of an exclusion of premises used for business purposes.
In July 1981 Lynn contacted Troy D. Archie, an agent of State Farm, concerning property he had purchased. The property was 13 acres of land with a house and several outbuildings, including a barn. Lynn told Archie that he wished to purchase an insurance policy on the property, that he wanted the best insurance available, and that he wanted to be sure the barn was insured because he had horses and an expensive stallion that he wanted to keep for breeding purposes. Lynn testified that he told Archie "that I was moving a stud up there and I wanted to be sure it was insured before I put him in the barn." Archie informed Lynn that the best insurance policy he could buy was a "Number Three" policy and assured Lynn that the barn and its contents would be covered. Lynn purchased the policy.
Approximately every six months, Lynn visited Archie's office to pay premiums and on at least two occasions mentioned his horses and the improvements he was making on his property. On one occasion he asked Archie's secretary, Joyce Ballard, if his barn was covered. She checked her computer and said that it was. On another occasion Lynn was talking with Archie and in response to Lynn's questions, Archie told him that his barn was covered and that he had "the best" coverage. At his depostion, Lynn was questioned about this conversation:
 "Q. At the time of the second office conversation, did you have any discussion with Mr. Archie concerning the fact that you were going into the business — being the horse business?
 "A. Yes, I have told him I was going in the horse business."
At trial, this question was read to Lynn and he read this answer from his deposition, following which State Farm's attorney continued his cross-examination as follows:
 "Q. Okay. You told him that on the second occasion in the office conversation?
"A. Yes.
 "Q. And what did — exactly, if you recall to the best of your recollection, did you tell him about going into the business?
 "A. I told him that I was going into the business — horse business in the future. That I wanted to make sure I was covered.
 "Q. Okay. So you told him then that you were going to go into it in the future, that you weren't in the business at that time; is that correct?
 "A. Well, I wasn't exactly into the business, but I had bought a stallion. But he was young when I bought him."
In June 1983 the barn was struck by lightning and, along with its contents (not including the horses), was destroyed by fire. Lynn filed a claim with State Farm. State Farm investigated the claim and denied payment because it determined that the barn was used for business purposes — breeding horses. The policy contained a provision excluding from coverage buildings "used in whole or in part for business purposes." *Page 1375 
Lynn filed suit against State Farm, alleging breach of contract, negligence, and a fraudulent misstatement of facts made by its agent, Archie, and his secretary, Ballard. Lynn asserts that the statements that his barn was covered were statements of a material fact that he relied on to his detriment. The contract and negligence counts did not go to the jury. On the fraud count, the trial court denied State Farm's motion for directed verdict, and the jury found for Lynn, specifying its award as including $25,000 compensatory damages and $250,000 punitive damages. State Farm filed a motion for judgment notwithstanding the verdict or in the alternative for new trial, claiming that the evidence did not support the verdict; that the $25,000 award for compensatory damages was not supported by any evidence; that there was no evidence to support an award of punitive damages because there was no evidence of a material misrepresentation committed with the intent to injure or deceive; and that the punitive damages award was excessive and the result of bias, passion, partiality, prejudice, or corruption. The trial court denied this motion.
State Farm argues that the trial court erred in denying its motion to dismiss Lynn's complaint because the complaint failed to specifically allege a fraudulent misrepresentation as required by A.R.Civ.P., Rule 9(b). According to Rule 9(b), in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. However, "it should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint, if the pleading gives fair notice to the opposing party." Committee Comments to A.R.Civ.P., Rule 9(b).
Lynn's complaint states in pertinent part that "It was represented to the Plaintiff by the Defendant, or through its authorized agent, that he would have full and complete coverage for all items located on his property, and [that] the coverage which was being provided by the Defendant specifically provided protection for such items." In light of this pleading, a motion for a more definite statement would probably have been due to be granted, but State Farm did not file such a motion. See Rule 12(e), A.R.Civ.P. This pleading gave sufficient notice to State Farm regarding what the statement was, who made it, and when it was made, however, so the trial court did not err in denying State Farm's motion to dismiss. "A motion to dismiss for failure to state a claim under Rule 12(b)(6), ARCP, should seldom be granted and is properly granted only when it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief." Winn-Dixie Montgomery, Inc. v.Henderson, 371 So.2d 899, 901 (Ala. 1979) (citation omitted).
State Farm next argues that the trial court erred in denying its motion for directed verdict or for J.N.O.V. The scintilla rule applies in determining whether to grant a motion for J.N.O.V. Rule 50(e), A.R.Civ.P. If there is a scintilla of evidence from which a jury could determine that a material fact was misrepresented to Lynn by State Farm or its agents, and that Lynn reasonably relied on this misrepresentation to his detriment, then the motion for J.N.O.V. was correctly denied.
Lynn's evidence would support a finding that, at the time Archie sold him the policy, he told Archie that he had an expensive stallion he planned to use as a stud, and that he did not want to put this horse or any of his other horses into the barn until he was sure he had insurance coverage. Lynn testified on cross-examination that, after he purchased the policy, he told Archie that he was going into the horse business. Lynn also testified that, during the same visit to Archie's office, both Ballard and Archie told him that the barn was covered and also that Archie told him that he had "the best" coverage.
The jury could have determined from this testimony that Archie was aware that Lynn was going into the horse business and that his statement as to the barn being covered was at least a reckless misrepresentation of a material fact. Further, the jury could have determined that Lynn reasonably relied on such a representation either in purchasing the policy in the first instance or in *Page 1376 
refraining from purchasing different coverage when Archie reassured him that he was covered. It was not error, therefore, for the trial court to deny the motion for J.N.O.V. on this ground.
State Farm argues that the trial court erred in denying its motion for J.N.O.V. or in the alternative for new trial because the $25,000 award of compensatory damages is not supported by any evidence. The highest figure that Lynn gave for the value of the barn was $14,000. This apparently included only the materials, but Lynn gave no estimate for the cost of labor that would have been required to rebuild the barn.
 "[T]he party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence. The award of damages cannot be made upon speculation, and the plaintiff has the burden of offering evidence tending to show to the required degree, the amount of damages actually suffered."
Johnson v. Harrison, 404 So.2d 337, 340 (Ala. 1981).
The highest value shown for the personal property lost in the fire was $6,921.48. This comes to a total of $20,921.48 or $4,078.52 less than the jury awarded. Although the insurance Lynn actually purchased did not insure the full value of this property (the barn was covered only to 10% of the value of the house, or $8,760), the full value may be recovered in damages under the fraud count. If Archie had not misrepresented that the barn was covered, Lynn might well have purchased separate coverage insuring it at full value.
State Farm's motion for new trial raised this issue. When a party raises the issue of excessiveness of the verdict in a motion for new trial, the appellate court may grant a remittitur when the sole ground for reversal is excessiveness of the judgment. Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981); Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899
(Ala. 1979); Code 1975, § 12-22-71. Therefore, a remittitur is granted as to the compensatory damages in the amount of $4,078.52 as a condition for affirmance of the judgment.
As to the punitive damages, State Farm asserts that the trial court erred in denying its motion for J.N.O.V. or in the alternative for new trial because there is no evidence to support an award of punitive damages, because, it says, there was no evidence of a material misrepresentation committed with the intent to injure or deceive. This Court has held that in order to recover punitive damages, the plaintiff must prove that the defendant made a material misrepresentation with knowledge of its falsity. Mobile Dodge, Inc. v. Waters,404 So.2d 26 (Ala. 1981). This Court has also held that if a defendant makes a misrepresentation without knowledge of its falsity, the law allows only compensatory damages (Ala. Code 1975, § 6-5-101), unless the misrepresentation is made so recklessly and heedlessly as to amount to the same thing as knowledge of its falsity. Ex parte Smith, 412 So.2d 1222 (Ala. 1982).
The evidence on the issue of whether Archie knew or should have known that Lynn was in the horse breeding business, and, therefore, that the barn came within the terms of the exclusion, is at least disputed. The trial court did not err in denying State Farm's motion for J.N.O.V.
Finally, State Farm argues that the trial court erred in failing to grant a remittitur or a new trial on the ground that the award of $250,000 punitive damages is excessive and the result of bias, passion, corruption, or other improper motive. Because punitive damages are left to the discretion of the jury, with no standard set for the measurement of them, a remittitur or new trial should not be ordered merely because in the opinion of the court the jury gave too much. ShilohConstruction Co. v. Mercury Construction Corp., 392 So.2d 809
(Ala. 1980). If, however, the court determines that the verdict is the result of bias, prejudice, corruption, or other improper motive, it is authorized to order a remittitur.
In Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), this Court addressed the question of how trial courts are to *Page 1377 
decide, and appellate courts are to review, a case where it is alleged that the jury has returned excessive damages as a result of bias, passion, prejudice, or other improper motive. We came to this conclusion:
 "[I]t is not only appropriate, but indeed our duty, to require the trial courts to reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages.
 ". . . Only by requiring that a record be made can this Court adequately discharge its role of appellate review of trial court action in either granting or refusing to grant a new trial where remittitur is granted or denied."
Id., at 1379.
The judgment is affirmed insofar as it imposes liability, conditioned upon Lynn's acceptance of the remittitur ordered by this Court regarding compensatory damages. The cause is remanded, however, for the trial court to consider the question of excessiveness regarding the award of punitive damages, in accord with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). The trial court is directed to make a return to this Court indicating its action on remand.
CONDITIONALLY AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.
MADDOX, BEATTY, ADAMS and HOUSTON, JJ., concur.
 ON RETURN TO REMAND
ALMON, Justice.
On October 2, 1987, this Court remanded this cause to the circuit court for its consideration of the issue of excessiveness of punitive damages, pursuant to the principles of Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).
The plaintiff accepted the remittitur as to compensatory damages, which this Court made a condition of affirmance. The trial court then complied with the remand instructions regarding punitive damages and entered the following order:
"This Court has previously considered Defendant's Motion for Judgment Notwithstanding the Verdict Or In The Alternative for a New Trial (hereinafter referred to as Motion for JNOV or New Trial) on the grounds of excessiveness on December 5, 1985, and has previously denied said motion.
"The Alabama Supreme Court in its opinion filed on October 2, 1987, in this case has affirmed in all aspects except the amount of the judgment and has remanded the cause back to the trial court for the entry of an order as required byHammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).
"The Court has read and considered the Supreme Court's opinion in this case and its decision in Hammond, supra. This Court did consider at the motion hearing as a portion of the overall evidence presented the following body of Alabama law regarding damages and remittitur:
 "The trial court may not substitute its own judgment for that of the jury in determining whether to grant a remittitur.
 "The authority to disturb a jury verdict on the ground of excessive damages is one which should be exercised with great caution.
 "A remittitur may be ordered in those cases where the court can clearly see that the verdict has been reached because of bias, passion, prejudice, corruption or other improper motives.
 "The right to a trial by jury is a fundamental, constitutionally guaranteed right, Article 1, Section 2, Constitution of 1901, and, therefore, a jury verdict may not be set aside unless the verdict is flawed, thereby losing its constitutional protection.
 "A jury verdict may be constitutionally flawed because it results, not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motives.
 "The cases have consistently held that in deciding whether a jury verdict is excessive because it is the result of passion, bias, corruption, or other improper motive, *Page 1378 
a trial judge may not substitute his judgment for that of the jury.
 "Only where the record establishes that the award is excessive as a matter of law, or where it is established and reflected in the record that the verdict is based upon bias, passion, corruption, or other improper motive, may a trial court order a new trial or remittitur.
 "Alabama courts do not favor setting aside jury verdicts unless justice demands it, and the Supreme Court has warned repeatedly that the authority vested in courts to disturb a jury's verdict on the ground of excessiveness should be exercised in great caution.
 "To permit a trial judge to substitute his judgment on the facts for that of the jury, or to give undue presumption to the action of the trial judge in dealing with verdicts, would minimize the jury system (and render) juries advisors of the trial judge rather than a positive force in the administration of justice.
 "Whether remittitur or a new trial should be granted on the grounds of excessiveness, the Alabama Supreme Court has said that neither remittitur nor a new trial is appropriate unless the verdict results from bias, passion, prejudice, or corruption or other improper motive. This strict standard, when the courts adhere to it, discourages judges from unnecessarily tampering with jury verdicts and thereby minimizes the potency of the argument that remittitur merely substitutes judicial opinion for jury opinion.
"In light of the established body of law in Alabama, it was the Court's opinion on December 5, 1985 (the date this Court denied Defendant's Motion For JNOV or New Trial, with amendments) that the jury verdict should not be interfered with in this case. Before stating the reasons for this, the Court will relate the sequence of events up to the hearing date of December 5, 1985.
"The Defendant filed its Motion for JNOV or New Trial on October 17, 1985 and paragraph eight (8) specifically speaks to the topic at hand and paragraph thirteen (13) alludes to this topic. The Defendant requested to orally argue the Motion and was granted that request. The Motion was set for oral argument, and the [defendant's attorney] requested a continuance so that he could have the benefit of additional preparation for his argument. The Motion for Continuance was granted on October 30, 1985, and the oral argument was reset for December 5, 1985, at 9:00 o'clock a.m. The Defendant then amended its Motion for JNOV or New Trial on November 27, 1985. A hearing was held on December 5, 1985, and the Defendant was heard on its Motion and was allowed to present to the Court all law, evidence and testimony relevant to the Motion.
"The Court notes that Defendant failed to present any evidence that the jury in this case returned its verdict based on bias, passion, prejudice, corruption or other improper motive. Defendant based its contention of improper jury conduct solely on the amount of the verdict returned. Contrary to Defendant's assertions, the Court found that the verdict was not excessive and that there was no evidence of bias, passion, prejudice, corruption or other improper motive on the part of the jury. This Court bases its opinion on the following reasons and factors which it observed at the trial of this matter:
"1. This Court allowed counsel for both parties to voir dire the jury. The court observed that the entire jury venire as well as the final jurors who actually heard the evidence in this case appeared to conscientiously and honestly answer all voir dire questions asked by the respective counsel. Neither before, during nor after the trial of this case has this Court been presented with any allegation or evidence that jurors answering voir dire questions gave false or misleading answers.
"2. This Court observed the parties and their respective counsel along with the jury's reaction during the trial. The trial of the case was conducted on a highly professional level by competent, seasoned advocates for both sides. Frivolity was not present at the trial of this case. The jury recognized the seriousness of the issues that were being presented for their determination. *Page 1379 
At no time did it seem or appear to the Court that any party in this case received less than a fair, impartial trial before the jury.
"3. The Court observed the caliber of the jurors and their attentiveness and apparent understanding of the issues and evidence in this matter. The jury was intelligent and was a representative cross-section of the peers of the parties and was very conscientious in the exercise of its duty. The Court particularly noted . . . the reaction of the jury to the testimony of State Farm's corporate representative, John M. Upton and its agent Troy D. Archie. The Court noted, along with the jury, the inconsistent testimony of the defense witnesses, particularly Troy D. Archie. The reluctance and evasiveness in question answering was apparent to any spectator in the courtroom.
"4. Even in light of the admission by the agent for State Farm, counsel for the Defendant argued to the jury in closing that the insurance company had done nothing wrong. The insurance company consistently held throughout the trial of this case that it had done nothing wrong and that there had been at some unknown time a change in circumstances. This continued 'stiff-neckedness' on the part of the Defendant had a profound effect upon the jury.
"5. At no point during the trial of the case did counsel for State Farm nor any of its corporate officers admit any wrongdoing. No offer of judgment in any amount was ever made. No criticism of the way and manner in which this policy was sold or adjusted was expressed by the Defendant to the jury.
"6. From the facts, this Court was reasonably satisfied that the insurance company knew that their agent made a material misrepresentation with knowledge of its falsity or at the very least recklessly and heedlessly made the same representations.
"The above facts relate only to a portion of the facts upon which the Court relied to reach its decision on the Motion. This Court found no evidence that this jury violated or misinterpreted the evidence or the law. The facts and circumstances that were admissible into evidence and the Defendant's attitude toward those facts, created the inescapable conclusion that misrepresentations had been made to Joseph B. Lynn which induced him to purchase insurance from a State Farm agent to Joseph B. Lynn's detriment. The representations were material with the intent to deceive or defraud or as stated above [were] at least . . . reckless misrepresentation[s] of a material fact.
"The amount of a civil fine or exemplary damages is largely left to the discretion of the jury. The Constitution allows juries to fix punitive damages. This court knows of no reason why there should be any judicial invasion into the function of the jury under the facts in this case. The Court views this jury as a 'properly functioning jury.' This Court finds nowhere in the record where it is established that the award is excessive because it is based upon bias, passion, corruption or other improper motive. This Court found that the facts that it heard and saw justify a large and substantial civil fine against the Defendant.
"In addition to the above, the Court has also considered those factors listed by the Supreme Court in Hammond, supra, as being appropriate for the trial court to consider. With regard to the culpability [of] the Defendant's conduct, the evidence clearly established that the conduct of the Defendant was intentional or a reckless misrepresentation of a material fact. It was against recognized and accepted insurance industry standards. The belief that the insurance company's or agent's interest should be placed above that of its customer in dealing with the sale or adjusting of its policies was totally rejected by the jury.
"Although the particular circumstances of this case may be rare in occurrence, the insurance industry and their agents should be discouraged from placing their interest above that of [their] customers when selling and adjusting insurance policies. Insurance companies and their agents are in a position to have knowledge and information which the lay person does not have. A purchaser of insurance, such as Joseph B. *Page 1380 
Lynn, has a right to rely on the representation of their insurance agents and companies.
"The Defendant has argued that the verdict in this case will adversely impact the insurance company. Any verdict for any party will have an adverse impact to some extent. The Court does not find that the impact of this verdict on the Defendant is such that would require a reversal of the jury's decision as to damages. In line with that same reasoning, the Court does not find that the impact on innocent third parties is of such significance or consequence so as to reverse the jury's determination on damages.
"This Court in denying the Motion for JNOV or New Trial on December 5, 1985, did so due to the fact that the Court did not find that the verdict was the result of bias, passion, prejudice or other improper motives. The Defendant made no showing at the December 5, 1985, hearing that would support any such misconduct on the jury's part. Now some two (2) years later in responding to the Order of the Supreme Court of Alabama, I have had an occasion to review the Court record and to reflect upon the conduct, demeanor, attitude and responses of the parties, witnesses, attorneys and jurors at various stages of the proceedings. The opinion of the Court on December 5, 1985, was and still remains that the verdict was not excessive and was not the result of bias, passion, prejudice or other improper motives. This Court is of the opinion that the jury's verdict is correct when considering the culpability of the Defendant's conduct, the desirability of discouraging others from similar conduct, and the impact upon the parties.
"It is therefore, ORDERED, ADJUDGED, AND DECREED, by this Court that:
"1. Defendant State Farm's 'Motion For Judgment Notwithstanding The Verdict Or In The Alternative For a New Trial' originally filed in this matter based on the issue of excessive damages on October 17, 1985 and as amended on November 27, 1985 (CR 282 through 285 and 294 through 302) is hereby OVERRULED and DENIED again.
"2. The award by the jury of punitive damages was not the result of bias, passion, corruption or other improper motives.
"3. The punitive damages award fixed by the jury at $250,000.00 and the judgment in said amount entered by this Court is not an excessive award as against the Defendant State Farm Fire and Casualty Insurance Company.
"4. The Order of this Court dated December 5, 1985 (CR 303) remains in full force and effect.
"5. The Circuit Clerk of Autauga County will certify this Order and Opinion to the Clerk of the Supreme Court as being this Court's Order as required by Hammond, supra, and as constituting this Court's report of its findings and conclusions as to why the jury verdict in this matter should not be disturbed."
State Farm has not filed a brief on this return to remand. In light of the thorough and amply supported reasoning in the trial court's order, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, BEATTY, ADAMS and HOUSTON, JJ., concur.