The clauses of the lease in question expressly refer to claims, etc., "arising out of, connected with or attributable to the use and occupancy of the facility," that is, the civic center, and to "claims . . . arising or resulting from any . . . participant in any activity in any part or portion of the Civic Center."
The majority's opinion states the question to be "whether as a matter of public policy such a contract can be enforced with respect to injuries that occur outside of theimmediate leased premises." (Emphasis added.) It then concludes that, because the accident occurred in the ballroom of the civic center, where the indemnitor "had no right of control," and "not within the actual leased area," the contract of indemnity was unenforceable as against public policy.
This interpretation of the facts is totally unjustified. The injured party was an employee of the indemnitor who had used a service entrance of the civic center and was proceeding through the civic center to the indemnitor's display room to work when the injury occurred. Surely this was an area both parties would have expected such persons would be free to use for that purpose. Suppose the accident had occurred immediately inside the front door farthest from the "River Room"? Would the indemnitor havecontrolled that form of entry by an employee any more? This case should not be decided upon such a tenuous ground, and the hypothetical case used to justify the majority's aberrant view of the facts renders that ground even more tenuous.
The result is, moreover, clearly contrary to the Court's decision in Brown Mechanical Contractors, Inc. v.Centennial Ins. Co., 431 So.2d 932 (Ala. 1983). In that case, we were confronted with the following indemnity clause:
 " 'The Subcontractor [Brown] hereby covenants to defend, indemnify, save harmless and exonerate the Contractor and the Owner as to and from all liability, claims, lawsuits and demands for personal injury and property damage arising out of work undertaken or to be performed by the Subcontractor, its employees, agents and subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor. The Subcontractor's above described liability insurance policies shall each contain contractual insurance coverage so as to protect the Contractor and the Owner under this indemnity agreement.' " (Emphasis added in Brown Mechanical Contractors, Inc.)
431 So.2d at 945.
In Brown Mechanical Contractors, Inc., we cited the test recognized in Industrial Tile, Inc. v.Stewart, 388 So.2d 171 (Ala. 1980):
 "In Industrial Tile we held that indemnification for one's own negligence is available only where 'the parties knowingly, even-handedly, and for valid consideration intelligently enter into an agreement whereby one party agrees to *Page 597 
indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, (emphasis added [in Brown Mechanical Contractors, Inc.]), 388 So.2d at 176. In that case the indemnity provision specifically made the contractor:
 " 'solely responsible to indemnify and hold harmless the Owner . . . from and against any and all claims . . . arising out of or occurring in connection with the performance of the work to be done pursuant to the contract and whether or not caused by or contributed to, or alleged to have been caused by or contributed to, by the active, passive, affirmative, sole or concurrent negligence or breach of any statutory duty, whether non-delegable or otherwise on the part of the owner. . . .' " [Emphasis added.]
 In Industrial Tile we found this language sufficient to reverse dismissal of the indemnity claim. The language of Goodner's and Brown's agreement, by contrast, is less clear, because Brown does not agree in so many words to indemnify Goodner for liability resulting from the latter's negligence. However, under Industrial Tile, such 'talismanic' language is not necessary if the requisite intent is otherwise clear. The opinion in Industrial Tile expressly follows numerous earlier cases in which provisions that lacked specific reference to the negligence of the indemnitee were enforced. Since Industrial Tile, we have twice upheld similar indemnity claims based on language contained in a deed and in a lease, Eastwood Lands, Inc. v. United States Steel Corp., 417 So.2d 164 (Ala. 1982); Mitchell v. Moore, 406 So.2d 347 (Ala. 1981). [Footnote omitted.]
 ". . . Nevertheless, with respect to indemnification for Goodner's own negligence, the language quoted and emphasized above is ambiguous. It refers only to work performed 'by . . . for and on behalf of the subcontractor.' This language need not encompass Goodner's own independent actions, which included, according to the trial court in a finding not contested on appeal, 'failing to carefully supervise the work of its subcontractor, Brown.' "
431 So.2d at 945. The language of the contract inBrown did not "clearly and unequivocally express an intent that Brown indemnify Goodner [the general contractor of Brown] for the latter's negligence," 431 So.2d at 946. The language of the lease here did "clearly and unequivocally express an intent" to indemnify. By the express language used in the instant case, the lessee "covenant[ed] to indemnify . . . the City of Montgomery . . . from and against any and all . . . liability, cost or expenses of any kind . . . whatsoever which the City . . . may sustain." Further, the lessee promised "[t]o save the City . . . harmless and to indemnify [it] against any claims or liability arising . . . from any injury to any . . . participant in any activity inany . . . portion of the Civic Center, regardless ofentrance gained." Moreover, the lessee expressly agreed that "Lessor shall not be responsible for any damages or injury that may happen to the Lessee, or the Lessee's . . . employees . . . from any cause whatsoever . . . and the . . . Lessee hereby expressly . . . agrees to indemnify it [Lessor] against any and all claims for such . . . damage or injury."
Thus, the indemnification agreement here does not suffer from the ambiguity found in Brown, supra. To the contrary, the intent of the parties to provide indemnity to the City of Montgomery for "expenses of any kind," for claims "from any injury" in any portion of the civic center, and "for any damages" to any of the lessee's employees "from any cause whatsoever" is clear from the language used in the lease. Indeed, if the indemnitor had wanted to restrict its liability, as the majority allows, it should have done so by specific language. Having failed to do so, the indemnitor should be held to its arm's length bargain. It follows that the trial court's ruling to the contrary was erroneous, and the majority's contrary conclusion is thus erroneous as well. In my view, the majority has thrown us back into the bramble bush of Alabama Great Southern R.R. v. *Page 598 Sumter Plywood Corp., 359 So.2d 1140 (Ala. 1978).