ALMON, Justice.
R.L. and Geraldine Borders brought an action against Alabama Power Company (“APCo”), alleging negligence, trespass, and nuisance. APCo filed a motion for summary judgment, which was granted by the trial court.
In 1952, Mr. Borders purchased real property on the Coosa River. At all times pertinent to this appeal, Mr. and Mrs. Borders have lived on the property. In 1965, APCo built a dam on the Coosa River that created Neely Henry Lake. As part of the Neely Henry Lake project, APCo acquired a flood easement from Mr. Borders. In the instrument creating the easement the following language appears:
“WHEREAS, Grantee contemplates the construction of dams across the Coo-sa River either up stream or down stream from said lands ..., which said dams and the pools of water created thereby are likely to cause the lands herein described or a portion thereof to be flooded or covered with water and may result in other consequential or incidental damages; Now therefore, for the consideration recited above, Grantors further grant, bargain, sell and convey unto Grantee the right to construct, maintain and operate such dams for the manufacture of electricity, and the consideration paid pursuant to the terms of this instrument includes and is accepted in full compensation for all consequences arising therefrom to Grantors their heirs and assigns as well as from the operation of the power plant or plants of Grantee, provided, however, this clause shall not be deemed to grant unto Grantee the right to flood any of such lands which lie above said datum plane of 511 feet above such mean sea level other than as a result of wave action.”
In December 1984, APCo discovered that some of its transmission line poles on islands in the lake needed replacing. To gain access to the poles, APCo lowered the water level about three feet. While the water level was lowered, a portion of the lake bank on plaintiffs’ land collapsed and slid into the lake. The plaintiffs contend that *447 APCo lowered the lake at an unreasonably fast rate and thereby proximately caused a portion of their property to collapse, damaging their property and their house. The plaintiffs also assert that by lowering the water level at an unreasonably fast rate, APCo committed a trespass, invading their interest in the exclusive possession of their property, and that the lowering of the water level at such a rapid rate constituted a nuisance pursuant to Ala.Code 1975, § 6-5-120 et seq.
The plaintiffs contend that the above-quoted exculpatory clause is invalid as a matter of public policy, citing Morgan v. South Central Bell Tel. Co., 466 So.2d 107 (Ala.1985); Republic Steel Corp. v. Payne, 272 Ala. 483, 132 So.2d 581 (1961); Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527 (1943); and Life & Casualty Ins. Co. v. Porterfield, 239 Ala. 148, 194 So. 173 (1940).
In Morgan, supra, this Court quoted a California case that set forth certain criteria to help identify the kind of agreement in which an exculpatory clause is invalid as contrary to public policy:
“ ‘[1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some member of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract or exculpation, and makes no provision whereby [an individual] may pay additional fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the [individual] is placed under the control of the [party seeking exculpation], subject to the risk of carelessness by the [party] or his agents.’ [Tunkl v. Regents of the University of California,] 60 Cal.2d 92, 98-101, 32 Cal.Rptr. 33, 37-38, 383 P.2d 441, 445-46 (1963). (Footnotes omitted.)”
466 So.2d at 117.
The transaction in this case does not meet these criteria. This is not a situation in which APCo is providing electrical service to a member of the public and attempting to be exculpated from liability arising out of the provision of that service; rather, the easement is an ownership interest in land that APCo acquired from Mr. Borders. Exculpatory clauses involving incidents to ownership of land have traditionally been excepted from the public policy against allowing parties to contract against the consequences of their own negligence. Eastwood Lands, Inc. v. United States Steel Corp., 417 So.2d 164 (Ala.1982); Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala. 1980), cert. denied, 449 U.S. 1081, 101 S.Ct. 864, 66 L.Ed.2d 805 (1981); Alabama Great Southern R. R. v. Sumter Plywood Corp., 359 So.2d 1140 (Ala.1978); Republic Steel Corp., supra. Protection from liability for flooding of the plaintiffs’ land or for "consequential or incidental damages” arising therefrom was the very reason APCo purchased the easement.
In Morgan the telephone company failed to include the plaintiff in its Yellow Pages listing; in Morris, supra, the housing authority caused the plaintiff to suffer burns by removing a thermostat from the water heater serving plaintiff’s apartment. Thus, in both of those cases, the corporations were seeking exculpation while providing the very public service they were created to perform.
This case is more like Republic Steel Corp., supra, in which it was held:
“The manifest intention of the parties to the deed, as gathered from the language used, was that there be reserved or created an easement in favor of Republic to do the very things complained of. And, since the easement is incident *448 to the ownership of lands and does not involve a person or corporation engaged in public service, the exculpatory provisions of the easement, to the extent they relieve Republic of liability for its negligence, are not against public policy.”
272 Ala. at 488, 132 So.2d at 584-85. Although APCo is a “corporation engaged in public service,” that fact is not dispositive here, for the reasons explained above.
This case is also similar to Eastwood Lands, supra, in which a mining company conveyed land, reserving the minerals and the right to remove them without leaving support necessary for sustaining the surface of the land. This Court held that the subsequent purchaser of the land was barred from recovery for damages caused by subsidence of the land. See also Holmes v. Alabama Title Corp., 507 So.2d 922 (Ala.1987).
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.