When can punitive damages be awarded in fraud actions? The lawyers for Lawyers Title Insurance Company correctly note:
 "Intent to deceive is the bedrock of a fraud case. Without it, the law allows only compensatory damages. With it, punitive damages may be awarded at the jury's discretion. State Farm Fire Cas. Ins. Co. v. Lynn, 516 So.2d 1373, 1376 (Ala. 1987). To prove an intent to deceive, the [plaintiffs] were bound to produce evidence that [defendant] made a misrepresentation . . . knowing that it was false, or that [defendant's] conduct was so reckless that it amounted to the same thing as a knowing lie. [State Farm Fire Cas. Ins. Co. v. Lynn, supra]; Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602, 604-05 (Ala. 1987)."
There is perhaps too much charity in these fine lawyers' further observation:
 "Over the years, this Court has struggled to apply these simple rules to an endless array of facts, and to formulate meaningful standards for the guidance of bench and bar. It is no surprise that the different results in seemingly similar cases can be reconciled only by a painstaking factual analysis. Compare Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala. 1981) (disallowing punitive damages), with Ex parte Lewis, 416 So.2d 410 (Ala. 1982) (upholding punitive damages).
 "This case is no different. Its resolution ultimately turns on whether the events at closing can rationally be characterized a brazen dereliction of duty or an unfortunate misunderstanding borne of the limitations of the English language and the relationship of the parties."
(Emphasis supplied.)
I appreciate the problem that the bench and bar has with this Court's struggle to apply these simple rules of law to the various sets of facts presented to us. I would accept the challenge and attempt to articulate meaningful standards — the absence of which has caused less charitable lawyers to refer to our opinions in this area as "burnt toast justice" (based on what the Justices had for breakfast) or, even worse, "sausage factory justice" (it does not matter what junk goes into the opinion as long as the end result is to the Justice's liking). However, my view of these facts does not allow me to reach this issue.
I find no duty to disclose on the part of Lawyers Title or Realty Title. Alfa Mutual Insurance Co. v. Northington,561 So.2d 1041 (Ala. 1990); Colonial Bank of Alabama v. Ridley Schweigert, 551 So.2d 390 (Ala. 1989) ("[d]uty is an essential element of fraud").
The agent for Lawyers Title and Realty Title asked the plaintiffs at the closing if they were aware of the rights of redemption. In response to this, plaintiff John H. Vella III "told her what [defendant] Roberts Brothers had told us about the fact that Richard and Shirley Magill [former owners of the property] had the right to redeem the property but that she [the agent of Lawyers Title and Realty Title] didn't have to worry about it because [the Vellas] had been assured that there was no way [the Magills] could or would want to redeem the property before July 2nd." In response to this, the agent for Lawyers Title said, "I just wanted to make sure you knew what rights of redemption meant."
 "Title companies and title insurance companies are not required to explain the significance and effect of exculpatory covenants and the like discovered in their title searches."
Holmes v. Alabama Title Co., 507 So.2d 922, 925 (Ala. 1987). They are forbidden from giving legal advice. Coffee CountyAbstract Title Co. v. State ex rel. Norwood, 445 So.2d 852,857 (Ala. 1983). However, if the United States Internal Revenue Service had a right to redeem, then internal procedures required that the following exception be placed in the title commitment: "Z-95 Right of the United States to redeem the insured premises from foreclosure sale *Page 588 
conducted on [date], as provided by the Federal Tax Lien Act of 1966 (26 U.S.C. § 7425)."
This was not done. As a consequence of this failure to comply with company procedure, the Vellas could possibly have recovered against Lawyers Title under the title insurance policy, for any loss that they sustained as a result of the I.R.S.'s redeeming the property insured, for this had not been "excepted" from coverage in accordance with company directives.
Likewise, Lawyers Title required that exclusions in title commitments and policies exclude "[a]ll rights outstanding by reason of the statutory right of redemption" instead of "[r]ights of redemption from foreclosure of mortgage," the phrase used in the Vellas' commitment and title policy. This may have afforded the Vellas a right of action under the policy for any loss that they sustained as a result of the I.R.S.'s redeeming the property insured under the title insurance policy.
But does this impose upon Lawyers Title or Realty Title a duty to disclose that will support a cause of action for fraud? I think not. Holmes v. Alabama Title Co., supra. Therefore, I would affirm the trial court's judgment.
I do not think that the trial court erred in submitting the negligence or misrepresentation claims against Roberts Brothers to the jury.
In fraud cases, the trier of fact should be apprised, as follows:
 "Fraud is never presumed; and to be accepted as a basis for judicial action it must be proved by clear and satisfactory evidence; and when a transaction is susceptible fairly to two constructions, the one which will support and free it from the imputation of impurity of intention will be adopted.' "
Henderson v. Gilliland, 187 Ala. 268, 272, 65 So. 793, 794-95
(1914) (quoting Allen v. Riddle, 141 Ala. 621, 37 So. 680
(1904)).
My review of the facts in this case persuades me that there was at least a "scintilla of evidence" (the applicable standard in this case) of each element of mistaken misrepresentation against Roberts Brothers for this issue to be submitted to a jury and that the jury's verdict was not plainly and palpably wrong.
 ON APPLICATION FOR REHEARING
KENNEDY, Justice.
Lawyers and Realty, as well as several amici curiae title companies, complain that the decision in this case is contrary to prior law. They complain that our opinion places a duty on title companies to disclose as to all possible redemptioners, creates new fiduciary duties for title companies, and requires title companies to engage in the unauthorized practice of law.
We disagree. Present at the closing with the Vellas were Sparks and Sarah Roberts, Realty's closing agent for the transaction. Roberts had the title examiner's file in front of her; that file contained the IRS tax lien. Roberts opened the file, took out the commitment for title insurance, and read to the Vellas the list of exceptions. After reading exception 11, which is quoted in our original opinion, Roberts asked the Vellas, "Are you aware of the rights of redemption?" John Vella answered by telling her what Roberts Brothers had told him: that Richard and Shirley Magill had rights to redeem the property, but that the Vellas had nothing to worry about because the Magills could not and would not redeem the property. Although Roberts Brothers' description of the rights of redemption was only half-accurate, Sarah Roberts confirmed the Vellas' understanding that only the Magills had rights of redemption by answering, "I just wanted to make sure you knew what rights of redemption meant."
A consideration of these facts reveals the answer to the title companies' complaints. Realty and Lawyers had actual knowledge of the IRS tax lien. They had actual knowledge not only that the Vellas did not know of the IRS tax lien or right of redemption but also that the Vellas believed that theonly rights of redemption on the home were the Magills' rights of redemption. The title companies nevertheless affirmatively represented to the Vellas that *Page 589 
the language of exception 11 meant that only the Magills had a right of redemption.
Those facts sufficiently support the Vellas' claim of reckless misrepresentation and the award of punitive damages. The opinion does not create a new duty to disclose regarding all possible redemptioners, nor does it create new fiduciary duties for title companies. As the opinion states, the title companies were bound by the duty described in Hopkins v.Lawyers Title Ins. Corp., 514 So.2d 786 (Ala. 1986).
Contrary to the complaints of the title companies, the opinion does not require title companies to engage in the unauthorized practice of law. The tax lien was in the file. For the title companies to disclose the fact of the existence of the lien would have in no way required giving an opinion or legal advice, Holmes v. Alabama Title Co., 507 So.2d 922 (Ala. 1987).
OPINION EXTENDED; APPLICATION OVERRULED.
HORNSBY, C.J., and JONES, ALMON, ADAMS, HOUSTON and STEAGALL, JJ., concur.